UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEONARD ROSENBOOM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:08-CV-1493 (CEJ) |
| ) | |
| DAVE DORMIRE, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

This matter is before the Court on the petition of Leonard Rosenboom for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I. Procedural Background

Petitioner Leonard Rosenboom is presently incarcerated at Jefferson City Correctional Center pursuant to the sentence and judgment of the Circuit Court of Jefferson County. On May 14, 2004, a jury returned guilty verdicts on one count of third-degree assault (misdemeanor), one count of first-degree assault (felony), two counts of forcible rape, and one count of kidnapping. The trial court sentenced petitioner as a prior offender to three consecutive sentences of life imprisonment on the felony assault and rape counts, and a consecutive term of fifteen years imprisonment on the kidnapping count. The trial court also imposed a concurrent one-year sentence in the county jail on the misdemeanor assault count. Petitioner timely filed a notice of appeal and, on November 22, 2005, the Missouri Court of Appeals affirmed his convictions and sentences. State v. Rosenboom, 174 S.W.3d 652 (Mo. Ct. App. 2005). Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the motion court denied after an evidentiary hearing. On May 6, 2008, the Missouri Court of Appeals summarily affirmed the denial

of post-conviction relief.  Rosenboom v. State, 252 S.W.3d 225 (Mo. Ct. App. 2008). On September 26, 2008, petitioner timely filed this petition for relief pursuant to 28 U.S.C. 2254.

II. **Background**

The events giving rise to petitioner's convictions occurred in the area of De Soto, Missouri.  On the evening of September 24, 2003, petitioner picked up Shane Reisner from his work place and drove him to the apartment Reisner shared with Sherry Patterson.  Along the way, they met up with Amy Walsh and invited her to join them in the apartment.  She agreed and followed them to Reisner's apartment.  After drinking in the apartment for awhile, petitioner and the two women left to go "four wheeling" in petitioner's SUV.  They purchased and drank more beer.  At some point, Ms. Patterson passed out in the back seat.  Petitioner and Ms. Walsh drove her to the apartment.  Petitioner helped Ms. Patterson into her apartment while Ms. Walsh waited in the SUV.

Petitioner returned to the car and drove to a secluded area.  Ms. Walsh and petitioner both testified that they talked for awhile and eventually started kissing. According to Ms. Walsh, petitioner became "overbearing;" he moved to the passenger seat with her and unbuttoned his pants.  She testified that she pushed him off and told him "it was not going to happen."  She asked him to take her back to her car.  After "whining" about women in Missouri, petitioner again moved toward Ms. Walsh and covered her nose and mouth with his hand; he moved her seat into the reclining position, lowered her pants and underwear, and raped her.

Ms. Walsh testified that when petitioner returned to the driver's seat he looked somewhat remorseful.  She tried to reassure him that "it was okay" and that she would not go to the police.  Petitioner became angry and threatening and accused her of

lying. He started the vehicle. Ms. Walsh testified that she begged him to return to her car, but he turned away from De Soto and drove very fast. He then turned into the woods and stopped the vehicle. He grabbed Ms. Walsh by the throat and began choking her. He raped her again, hit her with his fists, and grabbed her by the throat. Ms. Walsh testified that she could not breathe and that things began to "go[] real dark." She passed out.

Ms. Walsh was alone in the car when she regained consciousness. She let herself out and ran away, wearing only her bra and top. She approached the nearest road and waved down a vehicle driven by Kenneth Roth. Mr. Roth testified that Ms. Walsh said she had been raped and her attacker was in the area. Concerned that they were in danger, Mr. Roth drove from the area and called 911.

Police responded to Mr. Roth's call. Ms. Walsh provided what information she had regarding petitioner and his vehicle. She was then taken by ambulance to a hospital for treatment of her injuries, including a broken jaw and multiple bruises and scratches. Medical personnel observed that she had petechiae and her voice was hoarse -- signs consistent with strangulation. Semen and traces of her blood were detected in her vagina.

Petitioner testified that he and Ms. Walsh had consensual intercourse twice that night. According to petitioner, Ms. Walsh told him that she was going to call the police and say that he had raped her. He "lost it," he testified, and grabbed her by the throat and hit her.

Additional facts will be included as necessary to address the merits of petitioner's claims for relief.

III. **Legal Standard**

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively

unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

IV.     **Discussion**

**Ground 1: Denial of Motion for Continuance to Obtain Private Counsel**

Petitioner claims that the trial court erred in denying his motion for a continuance of the trial to enable him to retain private counsel to substitute for the public defender.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." Ungar v. Sarafite, 376 U.S. 575, 589 (1964) (citing Avery v. Alabama, 308 U.S. 444, 446 (1940)). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id. at 589-90.

Petitioner was arrested on September 25, 2003. A public defender was appointed to represent him on October 30, 2003. On February 17, 2004, the court set the case for trial on May 11, 2004. On April 20, 2004, petitioner filed a *pro se* motion to dismiss for violating his rights to a speedy trial; on April 28, 2004, counsel filed a request for a speedy trial.

The trial court conducted a pretrial hearing the day before the scheduled trial start. Petitioner moved to allow his two attorneys from the public defender's office to withdraw and to continue the trial setting. In contrast with his earlier efforts to invoke his rights to a speedy trial, petitioner offered to waive his speedy-trial rights. He explained that his family had obtained enough money to hire private attorney Joe

Sanchez, but that Mr. Sanchez would not enter on his behalf unless the court continued the case. Mr. Sanchez was not present in the courtroom but had contacted the judge at home the previous Friday.

Defense counsel argued that petitioner was no longer indigent and thus did not qualify for public defender services. The trial court rejected that argument, noting that defendant was an adult and his family had no legal obligation to provide counsel for him. The court also noted that there was no certainty that Mr. Sanchez would enter an appearance if the court continued the trial. The court stated that the interest of society in having the charges resolved had to be considered as well. Finally, the court noted, the victim was present and prepared for trial. "I assume that there is a certain amount of emotional trauma" connected with preparing to appear, [a]nd I do not believe that she should have to endure that again." (Tr. 138).

The Missouri Court of Appeals affirmed the trial court's decision. The appellate court noted that petitioner did not claim that his attorneys were unprepared for trial or that they were laboring under a conflict of interest. Furthermore, the appellate court noted, petitioner failed to establish that he was prejudiced by proceeding to trial with his existing representation – his lawyers deposed witnesses, litigated pretrial motions, conducted effective cross-examination, and presented "a cohesive defense."

Petitioner has failed to show that the decisions of the state courts with respect to his request for a continuance were contrary to or an unreasonable application of existing Federal law. Petitioner's first claim for relief will be denied.

### Ground 2: Denial of Mistrial – Shackles

Petitioner's counsel moved for a mistrial on the second day of trial. Counsel reported that, at the conclusion of the first day's proceedings, three law enforcement officers "surrounded" petitioner and "were beginning the process of" taking him into

custody before all the jurors had left the court room.  Contrary to petitioner's claim here, there is no evidence that petitioner was in shackles, and the trial court denied the motion for a mistrial.  (Tr. 580-83).[1]

"The two main constitutional concerns about the use of shackles during a trial are that they could impede a defendant's ability to participate and could suggest that the defendant is guilty."  Hall v. Luebbers, 296 F.3d 685, 698 (8th Cir. 2002) (citing Holbrook v. Flynn, 475 U.S. 560, 569 (1986) and Illinois v. Allen, 397 U.S. 337, 344 (1970)).  Petitioner's claim in his petition is based upon an erroneous recitation of the facts and thus will be denied.  To the extent that petitioner intends to claim he was harmed because the jurors saw him in custody, the Missouri Court of Appeals held that petitioner failed to establish that he suffered any prejudice from the possibility that jurors believed him to be in custody. Petitioner has not shown that this decision is contrary to or an unreasonable application of existing Federal law and his second claim for relief will be denied.

### Ground 3: Failure to Disclose Examining Doctor's Notes

Melissa Stapp, M.D., testified at trial regarding her examination of Ms. Walsh following the assault.  Her medical notes were not produced until after she testified.  Defense counsel moved for a mistrial, arguing that he would have used the notes to impeach Dr. Stapp.[2]  (Tr. 704-08).  The trial court determined that the notes were not intentionally withheld and that there was no evidence of prosecutorial misconduct.  The

---

[1]The following day, petitioner complained that a juror observed him being driven to the courthouse in a police vehicle.  The juror in question was discharged and replaced by an alternate juror.  (Tr. 753-63).

[2]The notes in question accompanied a rape kit.  Defense counsel asserted that the notes did not reflect that Ms. Walsh claimed to have been raped.  During her testimony the following day, Dr. Stapp described where in the notes she reflected that a sexual assault occurred.  (Tr. 717-24).

court allowed defense counsel to conduct a second cross-examination of Dr. Stapp the following day.

The Court assumes that petitioner intends to assert a claim under Brady v. Maryland, 373 U.S. 83 (1963). "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene 527 U.S. 263, 281-82 (1999). The Court has reviewed Dr. Stapp's testimony regarding the examination and her notes and concludes that nothing in the late-disclosed notes was impeaching. And, in light of the fact that defense counsel was afforded the opportunity to prepare and conduct a second cross-examination of Dr. Stapp, petitioner cannot establish that he was prejudiced by the late disclosure and his third claim for relief will be denied.

### Ground 4: Prosecutor's Improper Closing Argument

During closing argument, the prosecutor stated, "Now, [defense counsel] is going to get up here and tell you a bunch of stuff, but I know that you know that it was all made up to explain all that evidence that can't be gotten around." (Tr. 836-37). Petitioner asserts that this was improper.

Improper remarks by a prosecutor can violate the Fourteenth Amendment if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637 (1974). This Court may grant habeas corpus relief only if the challenged argument was "so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." Weaver v. Bowersox, 438 F.3d 832, 840 (8th Cir. 2006) (citation omitted). Relief will be granted only upon a showing of a reasonable probability that the outcome

would have been different but for the improper statement. Barnett v. Roper, 541 F.3d 804, 812-13 (8th Cir. 2008). In light of the evidence at trial, petitioner cannot establish that the prosecutor's comments affected the outcome of the trial.

V. Conclusion

In summary, petitioner has failed to establish that the state courts' decisions on his claims were contrary to, or an unreasonable application of, clearly established Federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in State court proceedings. 28 U.S.C. § 2254(d). The Court finds that petitioner has failed to make a substantial showing of the denial of a constitutional right and, therefore, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

A separate Order in accordance with this Memorandum will be entered this date.

                                                CAROL E. JACKSON
                                                UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2010.